In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00262-CR
______________________________


BENJAMIN FRED CLARK, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,284


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Benjamin Fred Clark appeals his conviction by jury trial for possession of a controlled
substance, namely methamphetamine. The sentence was enhanced by a prior felony conviction, and
Clark was sentenced to ten years' imprisonment. Clark complains that the trial court erred in denying
his motion to suppress evidence discovered in an improper "inventory search" of his vehicle and that
the evidence was legally and factually insufficient. We affirm the conviction.
            The evidence at trial showed that Clark failed to dim his headlights within 500 feet of Deputy
Wayde Davis, an Upshur County Deputy Sheriff. When Davis attempted to stop Clark for the traffic
violation, Clark fled and led the deputy on a high-speed chase until Clark crashed his truck into a
creek. Davis observed Clark exit the vehicle and attempt to hide something in the creek a short
distance from the truck. The deputies discovered three containers of methamphetamine in the creek
bed. 
Inventory Search
            In his first point of error, Clark challenges the denial of his motion to suppress the items
discovered in the "inventory search." We agree that an inventory search must be justified by
evidence of the arresting agency's normal operating policy or established routine.
            Deputy Marty Massoletti, a deputy sheriff with the Upshur County Sheriff's Department,
testified he conducted an "inventory search" of Clark's truck and discovered in the truck bed


 a can
of acetone,


 a can of charcoal lighter fluid in a brown paper bag, as well as a hypodermic needle in
a plastic trash bag. Deputy Massoletti and Paul Alan Steelman, an employee of the Upshur County
Sheriff's Department assigned to the Drug Enforcement Agency in Tyler, both testified that these
items were commonly used in the manufacture and use of methamphetamine and that the holes in
the bottoms of the cans were consistent with use for the manufacture of methamphetamine. 
            The United States and Texas Constitutions both guarantee the right to be secure from
unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. The Texas
Code of Criminal Procedure forbids any evidence obtained in violation of such guarantees to be
admitted against an accused. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.
2004–2005). There are, however, certain exceptions to the warrant requirement under which federal
and state law allow warrantless searches. One exception is an inventory search conducted pursuant
to "standardized criteria" or "established routine." Florida v. Wells, 495 U.S. 1, 4 (1990).
            Clark first argues that Article I, Section 9 of the Texas Constitution provides greater
protection than the Fourth Amendment to the United States Constitution. Clark cites the plurality
decision of the Texas Court of Criminal Appeals in Autran v. State, 887 S.W.2d 31 (Tex. Crim. App.
1994), for the proposition. In Autran, a plurality of the Texas Court of Criminal Appeals held that
Article I, Section 9 of the Texas Constitution provides greater protection than the Fourth Amendment
in the context of inventory searches of closed containers. Id. at 42. The members of the court
joining in the plurality opinion stated they would "refuse to presume the search of a closed container
reasonable under art. I, § 9 simply because an officer followed established departmental policy." Id. 
The opinion concluded that peace officers "may not rely upon the inventory exception" to conduct
a warrantless search of a closed or locked container. Id.
            This Court has previously noted that Autran was a plurality decision and is not binding
precedent, and we rejected the contention that the Texas Constitution provides greater protection
than the United States Constitution. See Madison v. State, 922 S.W.2d 610, 613 (Tex.
App.—Texarkana 1996, pet. ref'd); Hatcher v. State, 916 S.W.2d 643, 645 (Tex. App.—Texarkana
1996, pet. ref'd). Several of our sister courts have likewise rejected the argument that Article I,
Section 9 of the Texas Constitution provides greater protection from inventory searches than the
Fourth Amendment. See Rothenberg v. State, No. 01-03-00364-CR, 2004 Tex. App. LEXIS 5145
(Tex. App.—Houston [1st Dist.] June 10, 2004, no pet. h.); Garza v. State, 137 S.W.3d 878, 884
(Tex. App.—Houston [1st Dist.] 2004, pet. granted); State v. Mercado, 993 S.W.2d 815, 818–19
(Tex. App.—El Paso 1999, pet. ref'd); Jurdi v. State, 980 S.W.2d 904, 907 (Tex. App.—Fort Worth
1998, pet. ref'd); Wells v. State, 968 S.W.2d 483, 486 (Tex. App.—Eastland 1998, pet. ref'd); Trujillo
v. State, 952 S.W.2d 879, 881 (Tex. App.—Dallas 1997, no pet.); cf. Johnson v. State, 912 S.W.2d
227, 232 (Tex. Crim. App. 1995). We see no reason to reconsider our past decisions, and we reject
Clark's argument that the Texas Constitution provides greater protection than the Fourth
Amendment.
            In the alternative, Clark argues that the inventory search was improper because the State
failed to present any evidence that the search was conducted pursuant to standard operating
procedure of the investigatory agency.


 
            In Wells, the United States Supreme Court affirmed the Florida Supreme Court's decision to
suppress evidence found in a closed container during an inventory search, because police had "no
policy whatever with respect to the opening of closed containers encountered during an inventory
search." Wells, 495 U.S. at 4–5. The Court reasoned that "standardized criteria . . . or established
routine must regulate the opening of containers found during inventory searches." Id. at 4. Since
"there was no evidence that the inventory search was done in accordance with any standardized
inventory procedure," the trial court should have suppressed the evidence. Id. at 5 (Brennan, J.,
concurring). While the Supreme Court rejected the proposition that a policy could only allow the
search of all containers or a search of no containers, the Supreme Court emphasized that inventory
searches must be conducted pursuant to "standardized criteria" or "established routine." Id. at 4.
            The inventory exception to the warrant requirement exists in order to promote the public
policies of protecting an owner's property while it is in police custody; insuring against a claim of
lost, stolen, or vandalized property; and guarding police from danger. Id. While an officer may 
exercise some discretion in deciding whether to examine closed containers, the record must at least
indicate that police followed some "standardized criteria" or "established routine" when conducting
the search. Id. An inventory search may not serve as a "ruse for a general rummaging" in order to
discover incriminating evidence. Id. 
            Although the Supreme Court indicated that officers could exercise some discretion in
executing the inventory search, Wells forbids "uncanalized discretion" and requires that an inventory
search be conducted pursuant to "standardized criteria" or "established routine." Id. As this Court
has noted in dicta, failure by the State to show evidence that the search was conducted pursuant to
the police department's procedure will invalidate the search.


 While Deputy Davis testified that the
search of the bed of the truck was an inventory search, there was no evidence introduced at the
hearing on the motion to suppress that the department had a policy concerning inventory searches
or that the search was conducted according to "established routine." The State had to prove the
applicability of the exception to the warrant requirement. See Yaws, 38 S.W.3d at 723. However,
Deputy Massoletti testified at trial that it is the policy of the Upshur County Sheriff's Department to
conduct an inventory search concerning all property impounded and that an inventory search is
conducted each time a person is placed under arrest. 
            In reviewing a trial court's decision concerning a motion to suppress, we generally consider
only evidence adduced at the suppression hearing, since the ruling was based on that evidence, rather
than evidence introduced later in the trial. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996); Green v. State, 78 S.W.3d 604, 608 (Tex. App.—Fort Worth 2002, no pet.); Westfall v. State,
10 S.W.3d 85, 89 n.1 (Tex. App.—Waco 1999, no pet.). However, when the legality of the seizure
is relitigated at trial, consideration of relevant trial testimony is appropriate in our review. Rachal,
917 S.W.2d at 809; Green, 78 S.W.3d at 608; In re L.R., 975 S.W.2d 656, 658 (Tex.
App.—San Antonio 1998, no pet.). "Where the State raises the issue at trial either without objection
or with subsequent participation in the inquiry by the defense, the defendant has made an election
to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our
review." Rachal, 917 S.W.2d at 809. The Texas Court of Criminal Appeals concluded it would be
"unreasonable to ignore trial evidence in our review of the court's suppression decision only to be
confronted by the evidence in our consideration of whether the error was harmless." Id. At trial,
Clark objected to "anything that was found in the inventory search" and was granted a running
objection on all items found in the inventory search. There was no consensual relitigation of the
inventory search. Therefore, we cannot consider the evidence presented at trial concerning the
department policy for inventory searches in determining the admissibility of items found from such
search. Admission of evidence found from that search was error. 
            We are placed in the position that the Texas Court of Criminal Appeals envisioned in Rachal. 
Id. In determining if error was committed, we may not consider the evidence introduced at the trial
concerning the police department policy for conducting an inventory search; however, when
conducting a harmless error review, we cannot ignore such evidence. The error would clearly be
harmless because the evidence at trial indicates that the inventory search was conducted pursuant to
"standardized criteria" or an "established routine." A violation of the Fourth Amendment's guarantee
against unreasonable searches and seizures is an error of constitutional dimension. Accordingly, our
analysis is a harmless error review pursuant to Tex. R. App. P. 44.2(a), and we must reverse unless
we determine beyond a reasonable doubt the error did not contribute to the conviction or punishment. 
Deputy Massoletti testified at trial that it is the policy of the Upshur County Sheriff's Department to
conduct an inventory search concerning all property impounded and that an inventory search is
conducted every time a person is placed under arrest. Further, the items seized in the search did not
result in any additional charges. Clark was charged with possession of methamphetamine. The State
did not bring charges against Clark for any of the items discovered in the search of the truck. 
Possession of the items found in the truck, i.e., the acetone, lighter fluid, and hypodermic needle, is
not illegal. Although Steelman testified the compounds found were commonly used in the
manufacture of methamphetamine, Clark was not charged with manufacture of a controlled
substance, but rather only with possession of a controlled substance. As discussed below, sufficient
evidence exists even if the items had been suppressed. We conclude beyond a reasonable doubt that
the evidence did not contribute to the conviction or punishment in this case.



Factual and Legal Sufficiency
            In his remaining points of error, Clark contends the evidence is factually and legally
insufficient to support the verdict. He argues that the evidence is insufficient because the evidence
discovered in the alleged inventory search should have been suppressed. Specifically, Clark
contends there are insufficient affirmative links to connect him to the contraband.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Clark contends that, if the motion to suppress had been granted, insufficient evidence existed
to affirmatively link him to the methamphetamine. Because the contraband was not found on the
accused's person or in the exclusive possession of the accused, the evidence must affirmatively link
the accused to the contraband. Jones v. State, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998,
pet. ref'd). This Court has held that factors which should be considered when evaluating whether
an affirmative link exists are:
1) the defendant's presence when the search was executed; 2) whether the contraband
was in plain view; 3) the defendant's proximity to and the accessibility of the
contraband; 4) whether the defendant was under the influence of a controlled
substance when arrested; 5) whether the defendant possessed other contraband when
arrested; 6) whether the defendant made incriminating statements when arrested;
7) whether the defendant attempted to flee; 8) whether the defendant made furtive
gestures; 9) whether there was an odor of the contraband; 10) whether other
contraband or drug paraphernalia was present; 11) whether defendant owned or had
the right to possess the place where the drugs were found; and 12) whether the place
the drugs were found was enclosed.

Id.; see Chavez v. State, 769 S.W.2d 284, 288–89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). 
            Clark fled from the police at approximately 11:00 p.m., made furtive gestures, and was
observed attempting to hide something in the creek bed. Clark was the only occupant of the vehicle. 
Deputy Davis testified that the chase, which ended when Clark crashed through several trees and into
the creek bed, lasted for over a mile. During the chase, Davis claims Clark exceeded the speed limit,
failed to signal his turns, and almost lost control of his truck twice before the crash. During one of
these periods of diminished control, Davis observed the truck almost leave the road, slide sideways,
and heard the tires screech. Once Clark had crashed the truck through the trees into the creek bed,
Davis maintained surveillance with his headlights and flashlight. When he reached the woods, Davis
testified that Clark "fell out" of the wrecked pickup. Davis observed Clark run to the other side of
the creek and make "a bunch of movements like he was trying to hide something." The furtive
gestures consisted of "moving his arms around a lot," but not in a manner consistent with trying to
climb out of the creek. Davis testified that he formed the impression Clark was attempting to throw
something. When arrested, Clark's forearm had sustained an injury. Deputy Massoletti testified he
found two containers containing methamphetamine. One container was located approximately six
feet from the creek bed, and another container was located approximately six to ten inches from the
first. Trooper Curtis Lee Hollis, with the Texas Department of Public Safety, found a third
container, a brown bottle, lying approximately ten to fifteen feet from the edge of the creek. 
Massoletti testified there were no leaves, twigs, dew, dirt, or rain spots on the containers. Trooper
Hollis testified the bottle he discovered did not appear to have been there long. Massoletti testified
there was nothing about the condition of the containers that would indicate they had been on the
forest floor for any length of time. 
            Clark cites Denbow v. State, 837 S.W.2d 235 (Tex. App.—Dallas 1992, pet. ref'd);
Hernandez v. State, 739 S.W.2d 957 (Tex. App.—San Antonio 1987, pet. ref'd); and Williams v.
State, 859 S.W.2d 99 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd), for the proposition that flight
from the police and presence near contraband are insufficient to affirmatively link the accused to the
contraband. In Denbow, the appellant fled from the police, crashed his vehicle in a parking lot, and
then fled on foot. Denbow, 837 S.W.2d at 236. A bottle containing methamphetamine was found,
along with one of his gloves and his hat, within a foot of where the appellant had been. Id. In
Hernandez, the appellant was found lying unconscious in a known drug area with a package of
heroin two to four inches from his hand. Hernandez, 739 S.W.2d at 957. Although the appellant
appeared to be intoxicated, the San Antonio Court of Appeals held that the evidence was insufficient
to affirmatively link the accused to the contraband. Id. at 958. The appellant in Williams fled from
the police, matched the description of a person the police had been informed had been engaged in
narcotics trafficking, the controlled substance was discovered near where the appellant had been, and
no other persons or packages were found in the area. Williams, 859 S.W.2d at 101. The First
District Court of Appeals held that the evidence did not provide sufficient affirmative links. Id. at
101–02. These cases, though, are distinguishable from the current situation. 
            First, Denbow required that the State exclude every other reasonable hypothesis except that
of the guilt of the defendant. See Denbow, 837 S.W.2d at 238. The Texas Court of Criminal
Appeals has explicitly rejected the "reasonable hypothesis" construct. See Geesa v. State, 820
S.W.2d 154, 156–61 (Tex. Crim. App. 1991), overruled on other grounds, Paulson v. State, 28
S.W.3d 570 (Tex. Crim. App. 2000); Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995);
Jennings v. State, 107 S.W.3d 85, 89 (Tex. App.—San Antonio 2003, no pet.); Hernandez v. State,
867 S.W.2d 900, 904 (Tex. App.—Texarkana 1993, no pet.). The affirmative link to the contraband
does not need to exclude every other reasonable hypothesis except the defendant's guilt.


 In addition,
Hernandez and Williams are distinguishable from the current case because, in this case, there was
evidence of suspicious gestures. In Hernandez and Williams, the police did not observe any
suspicious gestures. Hernandez, 739 S.W.2d at 957 (suspect unconscious); Williams, 859 S.W.2d
at 101 (noting there was no evidence of furtive gestures). "The number of factors present is not as
important as the degree to which the factors tend to affirmatively link the accused to the contraband." 
Williams v. State, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd). Even without the evidence
discovered during the search of the truck, there are sufficient affirmative links. Clark fled from the
police, the truck crashed at the scene belonged to him, the contraband did not appear to have been
in the woods long, and Clark was observed making suspicious gestures. Further, the evidence
concerning the items discovered during the inventory search (acetone, lighter fluid, and hypodermic
needle) may be considered in a legal and factual sufficiency review. "In applying the Jackson
sufficiency review, an appellate court 'must consider all evidence which the jury was permitted,
whether rightly or wrongly, to consider.'" Moff v. State, 131 S.W.3d 485, 488 (Tex. Crim. App.
2004). "[T]he same rule and reasoning are applicable to a factual sufficiency review." Camarillo
v. State, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). The Texas Court of Criminal
Appeals has explained that, if a portion of the evidence is erroneously admitted, the accused may
complain on appeal of that error, and if the complaint has merit and the error is reversible, a new trial
should be ordered. But jurors do not act irrationally in considering evidence admitted by the trial
court. A reviewing court is obliged to assess the jury's factual findings from this perspective. See
Thomas v. State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988). The items discovered during the
search further link Clark to the contraband. Viewed in a light most favorable to the prosecution, a
rational juror could have found all the essential elements beyond a reasonable doubt. 
            Viewed in a neutral light, a rational juror could have found Clark guilty beyond a reasonable
doubt. The contrary evidence is not strong enough that the State could not have met its burden of
proof. Although Deputy Davis observed that Clark's arm was bleeding profusely, there was no blood
on the objects containing the contraband. We note that the police did not fingerprint any of the items
containing the contraband. We further note that the contraband was found in a public area. After
weighing the evidence supporting and contravening the conviction, the contrary evidence is not
strong enough that the State could not have met its burden of proof. Further, the evidence is not too
weak to support the jury's finding of guilt beyond a reasonable doubt. The evidence is legally and
factually sufficient to support the jury's verdict.
            We affirm the judgment of the trial court.



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 18, 2004
Date Decided:             October 13, 2004

Do Not Publish