**Jacob Lee JENNINGS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–01–00658–CR.**

Court of Appeals of Texas,
San Antonio.

March 31, 2003.

86

Melaina L. Hood, Attorney At Law, San Antonio, for Appellant.

Mary Beth Welsh, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SARAH B. DUNCAN, Justice.

Opinion by SARAH B. DUNCAN, Justice.

A jury found Jacob Jennings guilty of possession of a switchblade knife, a prohibited weapon. He was sentenced to one year in jail, probated for two years, and fined $300.00. We hold the trial court abused its discretion in denying Jennings' motion for a new trial because the uncontroverted evidence establishes juror misconduct. Accordingly, we reverse the trial court's judgment and remand the cause for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

While on patrol, Officer Scott Sharp saw a male running across a highway median towards a business district that had a high rate of crime. Suspicious, Sharp circled around and attempted to locate the man.

Upon turning into the business district, Sharp noticed a black Nissan pickup truck sitting in a parking lot and observed a male, later identified as Jacob Jennings, sitting in the driver's seat with the door open and a woman, Jennings's wife Tanya, sitting on the rear of the truck. After briefly observing the couple, Sharp pulled his vehicle behind the truck and called for a license plate check. As Jennings approached the patrol vehicle, Sharp, concerned for his safety, told Jennings to stop and wait. Sharp then approached Jennings and questioned him about the situation. Jennings identified himself, explained that his truck had just broken down, and he was waiting for a tow truck. Shortly thereafter, at Sharp's request, Officer Morales arrived at the scene to assist.

The license plate check revealed outstanding traffic warrants for the vehicle and for an individual matching Jennings' description. Therefore, Jennings was handcuffed while the warrants were verified. Upon verification, Jennings was placed under arrest for the outstanding traffic warrants. Due to Jennings's arrest and the condition of the vehicle, Sharp decided to impound Jennings's truck. Sharp and Morales conducted an inventory search of the vehicle and discovered a switchblade knife under the driver's seat. Sharp notified Jennings of his discovery, gave Jennings his *Miranda* warnings and questioned him about the knife. Jennings showed no surprise, but denied it was his. Jennings was charged with possession of a prohibited weapon.

After the jury found Jennings guilty of possessing the switchblade knife, he was sentenced to one year in jail, probated for two years, and fined $300.00. Jennings moved for a new trial, contending, among other things, that "the verdict of the jury was decided in another manner than by fair expression of opinion by the jurors."

Jennings supported his claim of jury misconduct with the affidavit of the jury foreperson, Rebecca Burrow. Later, at the hearing on Jennings' motion for new trial, Burrow's affidavit was introduced into evidence without objection from the State.[1] In her affidavit, Burrow describes the process used by the jury to decide whether to return a guilty or not guilty verdict:

4. At first we took a vote and it was three to three; then another vote and it was four to two not guilty.

5. We were deadlocked at this point, we discussed and discussed it until Mary said lets do a list of facts that make him guilty and facts that made him not guilty and then whichever side has the most facts is how we will vote. Then we all agreed that whichever list was the longest got our vote. Meaning, if the guilty list had twelve things and the not guilty had four then we would all vote guilty. Which is what happened; the guilty list had twice as much [sic] things listed than the not guilty list so we all voted guilty. If the longest list would have been the not guilty list we would have voted not guilty because that's what we agreed to.

Burrow also described how the jury's agreement changed her vote:

8. Before we all agreed to be bound by the longest list my vote was not guilty. We discussed the same things that were put on the lists during our discussions before doing the lists when the vote was still deadlocked. However, doing the lists changed the vote to guilty. I changed my vote from not guilty to guilty because of the greater quantity on the guilty list and our agreement to do so eventhough [sic] I still had reasonable doubt. The only thing I was basing my guilty verdict on was that they (the police officers) found the knife in his truck. I kept telling them 'the boy did not know the knife was there'; nor did I believe he had possession of the knife. In fact it was my opinion then and is now that [Jennings] did not know the knife was there and therefore could not knowingly or intentionally possess the knife.

Although the State did not introduce any controverting evidence, the trial court denied Jennings' motion.

### SUFFICIENCY OF THE EVIDENCE

■ Jennings argues that the evidence is legally insufficient to establish the required affirmative link between himself and the contraband. We disagree.

### Scope and Standard of Review

In evaluating a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). The evidence is legally insufficient only if a ration-

---

1. The fact and nature of the jury's agreement is contained in the jury foreperson's affidavit. We recognize that Texas Rule of Evidence 606(b) prohibits a juror from testifying "as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." TEX.R. EVID. 606(b). However, Rule 606(b) does not apply absent an objection. *See Salazar v. State*, 38 S.W.3d 141, 147 (Tex. Crim.App.), *cert. denied*, 534 U.S. 855, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001); *Ramirez v. State*, No. 04–00–00496–CR, 2002 WL 808132, at *5 n. 5 (Tex.App.-San Antonio May 1, 2002, pet. ref'd) (not designated for publication). Here, as the State recognizes, we may consider the foreperson's affidavit because the State did not object to its admission into evidence. *See Brantley v. State*, 48 S.W.3d 318, 329 (Tex.App.-Waco 2001, pet. ref'd).

al jury could not have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wesbrook*, 29 S.W.3d at 111. The jury, as the trier of fact, is the sole judge of the credibility of witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.), *cert. denied*, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999). Because it is the province of the jury to determine the facts, any inconsistencies in the testimony should be resolved in favor of the jury's verdict. *Id.*; *Johnson v. State*, 815 S.W.2d 707, 712 (Tex.Crim.App.1991) (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)).

### Applicable Law

■ The State was required to prove that Jennings intentionally and knowingly possessed a prohibited weapon and exercised actual care, custody and control over the contraband. TEX. PEN.CODE ANN. § 1.07(a)(39) (Vernon 2003); *see Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997) (holding that sufficiency of the evidence is measured against a hypothetically correct jury charge). If the defendant does not have exclusive control over the premises where the contraband is found, the prosecution must show additional affirmative links between the defendant and the contraband. *See Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App.1988); *Ramirez v. State*, 897 S.W.2d 428, 436 (Tex. App.-El Paso 1995, no pet.). These affirmative links may be established by direct or circumstantial evidence that raises a reasonable inference of the defendant's knowledge and control of the contraband; the defendant's connection with the contraband must be more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim.App.1995); *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986). The required

affirmative links customarily emerge from a non-exclusive list of factors and the logical force they have in combination with one another. *Corpus v. State*, 30 S.W.3d 35, 38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In the context of a prohibited weapon, this non-exclusive list of factors includes whether: (1) the weapon was in a place owned by the accused; (2) the weapon was in a vehicle driven by the accused; (3) the weapon was conveniently accessible to the accused; (4) the weapon was in plain view; (5) the weapon was found in an enclosed space; (6) the weapon was found on the same side of the vehicle as the accused; (7) the conduct of the accused indicated a consciousness of guilt; (8) the accused had a special relationship to the weapon; and (9) affirmative statements connect the accused to the weapon. *See Davis v. State*, 93 S.W.3d 664, 668 (Tex. App.-Texarkana 2002, pet. filed); *Corpus v. State*, 30 S.W.3d at 38.

### Discussion

Viewing the evidence in the light most favorable to the verdict, the following evidence links Jennings to the switchblade. Jennings was sitting in the drivers' seat when Officer Sharp arrived at the scene, and is the only person Officer Sharp ever saw in the passenger compartment of the truck. Sharp later found the switchblade under the driver's seat. The switchblade was the only thing under the driver's seat and was easily accessible to the driver. The knife was lying sideways on a hump under the seat. This led Officer Sharp to believe it had been placed there recently, because if the truck were moving and then braked, the switchblade would have rolled forward to where the driver's feet were. Due to the amount of trash and junk in the back seat of the truck, it would have been difficult for anyone in the back seat to place the knife where it was found. Al-

though there was no direct evidence Jennings owned the truck, his wife repeatedly referred to it as "Jacob's truck" in her testimony and testified it was the truck he used. Also, when Officer Sharp ran the license plates on the truck, the information returned to him was that there were three outstanding traffic warrants on Jennings associated with a black Nissan pickup truck with that license plate number. Jennings showed no surprise when Officer Sharp told him he had found the switchblade, and didn't ask to see it, which suggests he was aware of its presence in the truck. Finally, Officer Sharp testified that when he first made his presence known, Jennings acted suspiciously. He testified that most people remain in their vehicles unless the officer tells them otherwise. In his experience, people who get out of their vehicle and approach the police car, as Jennings did, are hiding something in their car.

Notwithstanding this evidence, Jennings argues there is no evidence that he knowingly possessed the switchblade and that the State proved only his presence in the vicinity of the weapon. Jennings focuses on the lack of any direct evidence connecting him to the contraband and testimony that the knife could have been placed or lost in the car by someone else. Jennings' wife testified the truck had been parked in various parking lots and inoperable for several months. Relying primarily on *Humason v. State*, 728 S.W.2d 363 (Tex.Crim. App.1987), which Jennings contends is analogous to this case, "the evidence of links between [Jennings] and the weapon, whether considered individually or in combination, failed to eliminate the reasonable hypothesis that appellant was entirely unaware of the presence of the weapon." However, we no longer use the "outstanding reasonable hypothesis" test in reviewing the legal sufficiency of evidence in circumstantial evidence cases. *See Geesa*

*v. State*, 820 S.W.2d 154, 156 (Tex.Crim. App.1991), *overruled on other grounds*, *Paulson v. State*, 28 S.W.3d 570 (Tex.Crim. App.2000). *See Brown*, 911 S.W.2d at 748 (Court of Criminal Appeals disavows its evidentiary analysis in *Humason*, calling it "facile and counterintuitive"). Moreover, Jennings' wife's testimony was contradicted by what Jennings told Officer Sharp at the scene—that the truck had "just" broken down and he was waiting for a tow truck. The weight and credibility to be accorded each witness's testimony is determined by the jury. Accordingly, we resolve conflicts in a light most favorable to the verdict. *See Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim.App.1992).

We hold the evidence affirmatively linked Jennings to the switchblade and raises a reasonable inference Jennings knew about and had control of the weapon. A rational jury could have found beyond a reasonable doubt Jennings knowingly possessed a switchblade and exercised actual care, custody and control over it. *See Corpus v. State*, 30 S.W.3d at 38; *Hurtado v. State*, 881 S.W.2d 738, 745 (Tex.App.- Houston [1st Dist.] 1994, pet. ref'd).

## JURY MISCONDUCT

■ Jennings also contends the trial court erred in denying his motion for a new trial, because jurors bound themselves to an agreement that did not represent a fair expression of their opinion. We agree.

### *Standard of Review*

We review the trial court's ruling on a motion for new trial under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App.), *cert. denied*, 534 U.S. 855, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). Under this standard, we must "afford almost total deference" to the trial court's determination of the his-

torical facts and of mixed questions of law and fact that turn upon an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Therefore, when the trial court confronts "conflicting evidence on an issue of fact as to jury misconduct," resolution of the conflict is for the trial court. *See Salazar*, 38 S.W.3d at 148. On the other hand, the abuse of discretion standard of review requires that we review questions of law, as well as mixed questions of law and fact that do not turn upon an evaluation of credibility and demeanor, de novo. *Guzman*, 955 S.W.2d at 89.

### Discussion

 A defendant must be granted a new trial "when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion." TEX.R.APP. P. 21.3(c). To demonstrate jury misconduct, the defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. *Gomez v. State*, 991 S.W.2d 870, 871 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (citing *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim.App. [Panel Op.] 1981)).

Burrow's affidavit establishes that her vote resulted not from a fair expression of her opinion but the jurors' agreement to be bound by the longer of the two lists. The State argues, however, that Burrow's "affidavit did not demonstrate that [the] verdict was decided by lot. The affidavit simply describes deliberation." However, Rule 21.3 is not limited to lot or chance verdicts; it prohibits any "verdict [that] has been decided by lot or in any manner other than a fair expression of the jurors' opinion." TEX.R.APP. P. 21.3(c). Nor can we agree that Burrow's affidavit merely describes the jury's deliberations; Burrows plainly recounts how she changed her vote of "not guilty" to a vote of "guilty"

because of the jurors' agreement to be bound to vote in accordance with the longer of the two lists and even though she still had reasonable doubts about Jennings' guilt.

Because the uncontroverted evidence establishes juror misconduct under Rule 21.3(c), we hold the trial court abused its discretion in denying Jennings' motion for new trial. We further hold that this error affected Jennings' substantial rights. *See Garza*, 630 S.W.2d at 274.

### CONCLUSION

Because the trial court abused its discretion in denying Jennings' motion for new trial, we reverse the trial court's judgment and remand the cause for a new trial.