In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00068-CV


______________________________







IN THE MATTER OF THE ESTATE OF


CHARLES E. KILLIAN, DECEASED







 


On Appeal from the 336th Judicial District Court


 Fannin County, Texas


Trial Court No. 32437




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Dennis Killian, one of the seven children of Charles E. Killian, appeals from one or both of
two orders entered February 9, 2006, in his deceased father's pending estate. Those orders, titled
"Order Approving Final Accounting" and "Order on Motion for Summary Judgment," essentially
decreed that the estate be wrapped up by the independent executor (1) and also dismissed various
challenges to the Executor's previously accomplished sale of approximately 150 acres of real
property, in addition to making numerous other rulings not addressed by the current appeal. (2)

 Procedurally, this case is a quagmire. It appears that the Executor sold, to one of the children,
real property that was a principal asset of the estate, but only after obtaining explicit permission from
the trial court. It appears further that Dennis and one sister immediately attempted to contest the sale
on a number of grounds and that the net sale proceeds were accordingly frozen in place pending the
outcome  of  that  proceeding.  An  inventory  and  appraisal  was  approved  by  the  trial  court
December 30, 1996. No appeal ensued from that approval.

 Years later, the Executor filed a motion for summary judgment seeking to move the
proceedings toward completion. As his sole response to the motion for summary judgment, Dennis
filed an "answer." Dennis's answer to the motion for summary judgment was not particularly
responsive to the issues pressed by the motion and provided no summary judgment evidence.

 In a traditional motion for summary judgment, the movant has the burden of showing that
there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Once the movant establishes that
it is entitled to summary judgment, however, the burden shifts to the nonmovant to show why
summary judgment should not be granted. Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989). In
reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every
reasonable inference in the nonmovant's favor. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911
(Tex. 1997). All doubts about the existence of a genuine issue of a material fact must be resolved
against the movant. Johnson County Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284, 285 (Tex.
1996).

 Because the party moving for traditional summary judgment carries the burden to establish
that no material fact issue exists and that it is entitled to judgment as a matter of law, "the nonmovant
has no burden to respond to a summary judgment motion unless the movant conclusively establishes
its cause of action or defense." M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23
(Tex. 2000). Because a motion for summary judgment must stand on its own merits, the nonmovant
may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law,
even if the nonmovant filed no response to the motion. See id.

 Thus, the fact that Dennis did not provide any summary judgment evidence in support of his
answer is not immediately dispositive. But Dennis has a problem. On appeal, we may address
alleged errors of the trial court only if they have been brought to our attention and have been
adequately argued.

 For an issue to be properly before this Court, the issue must be supported by argument and
authorities and must contain appropriate citations to the record. See Tex. R. App. P. 38.1(h); Knoll
v. Neblett, 966 S.W.2d 622, 639 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). We are not
required to search the record, with no guidance from appellant, to see if an issue of material fact was
raised by the record. See Hall v. Stephenson, 919 S.W.2d 454, 466-67 (Tex. App.--Fort Worth
1996, writ denied).

 Dennis's principal complaint on appeal seems to be that his share of the proceeds from the
sale of the real property has not yet been distributed to him. In his prayer, Dennis asks that we order
the Executor to divide and distribute the property, that the Executor be ordered to account for the
estate, and if necessary to appoint an independent auditor to examine the distribution for the court
and heirs. Dennis, however, does not attack any particular aspect of, or make reference to any
alleged specific error in, the orders from which he appears to appeal.

 We note that Dennis's complaint that the Executor has failed to disburse funds is a situation
of his own making. The record reflects that the funds were available for distribution nearly ten years
ago, with a much lower figure for attorneys' fees, and that the distribution was halted by pleadings
filed by Dennis or his allied sister. Dennis has not pointed out how he believes the failure to
disburse was due to any error by the trial court or the Executor. Dennis also seems to overlook the
fact that the trial court's orders serve to move the estate closer to ultimate distribution.

 Dennis's complaint about alleged mistakes in the inventory is one that should properly have
been raised ten years ago by an appeal from the order approving the inventory and appraisal. It
cannot be addressed now.

 Dennis's complaints about property having been given to some heirs while others received
nothing seems to be directed at the court-approved sale of the approximately 150 acres to one of the
children. That determination was made long ago and was not appealed at the time. It cannot be
attacked now.

 Dennis's complaints about attorneys' fees are not based on excessiveness or lack of proof, but
on his position that all of the litigation was unnecessary and thus those fees should not be charged
against the estate. The record shows that Dennis and his sister instigated the litigation, and the
record indicates that they were responsible for its continuation over a period of years. (3) Thus, after
a successful defense of the estate from attack, attorneys' fees are properly recoverable by the
Executor. See Tex. Prob. Code Ann. § 243 (Vernon 2003).

 No error has been shown.

 We affirm the judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 15, 2007

Date Decided: April 5, 2007
1. The independent executor is Charles Edward Killian, not to be confused with Charles E.
Killian, the decedent. To minimize confusion herein, we will refer to the independent executor as
the Executor, to Dennis Killian as Dennis, and to Charles E. Killian as the Decedent.
2. The summary judgment incorporated into it the order referencing the final account. That
summary judgment also determined that Angela Leigh Armstrong, Misty Janalle Bowers, and April
Dawn Young had no standing as plaintiffs; that only Dennis Killian had standing among the
plaintiffs; that Charles Edward Killian, as independent executor of the estate, had followed proper
procedure in selling the approximately 150 acres; that the Executor did not purchase the real property
in question, but a different child of the decedent did; that Mira Marie Killian, Joann Killian Young,
and Billy Joe Killian should be dismissed from the pending lawsuit; that costs would be assessed
against Dennis Killian, Mary Killian Kay, Angela Leigh Armstrong, Misty Janalle Bowers, and April
Dawn Young; that the final accounting was approved; that all pending motions by Mary Killian Kay
were dismissed; that pending petitions related to the sale of the approximately 150 acres, that is, to
cancel the deed and to impress a constructive trust on the proceeds, were denied; and that the
pending petition to remove the Executor was denied. This appeal appears to complain only
regarding the sale of the 150 acres and the lack of a distribution of the estate.
3. Dennis's allied sister is not a party to the appeal. It appears that she went through four
attorneys, several of whom were dismissed shortly before some contested hearing (thus resulting in
lengthy continuances), and finally appeared pro se. Dennis was evidently pro se for the whole
proceeding until this appeal was filed.



Q. [DEFENSE COUNSEL]: And, David, you know that I've been appointed
by the Court to represent you in this matter, is that correct?
 
A.Yes, sir, but I refuse. I want a lawyer that's going to help me.
 
. . . .
 
Q.For a first-degree felony, the law is five to ninety-nine years. If you
have at least one prior felony conviction, the minimum moves from five to fifteen
years. I can show you the statutes on that. Do you want some time for me to discuss
that with you and to show you the statutes?
 
A.No, sir. I want me another lawyer that's trying to help me.
 
Later, just before jury selection, the following dialogue occurred:
[APPELLANT]: Mr. Peek, I know I have -- I know you convicted me of
doing a burglary charge back then, which I was wrong. I was wrong for doing that. 
I admitted to doing it, that I was wrong. But I asked you please would you help me
get a lawyer or somebody that's going to help me because I did not rob this lady.
 
. . . .
 
[APPELLANT]: Mr. Peek, I have been asking him -- I mean, I've been saying
that I needed another lawyer way before the jury trial. I guess he ain't just been
saying nothing. I've been saying I needed another lawyer. I've been saying this.
 
. . . .
 
[APPELLANT]: If they go ahead and pick the jury and Momma and them
buy me a lawyer, is it possible that the bought one can appoint me?
 
THE COURT: Can do what?
 
[APPELLANT]: Well, my momma, they're trying to buy me a lawyer now. 
They're trying to buy me a lawyer. I'm just asking if they -- if I go on and like pick
the jury and my momma and them find me a lawyer, they buy me a lawyer, is it
possible my paid lawyer can appoint me? 
 
                        THE COURT: Can appoint you?
 
[DEFENSE COUNSEL]: Can represent him.
 
[APPELLANT]: Represent me.
 
THE COURT: Sure, he could come in here and he could represent you, . . . .
            These requests, though, were for new counsel rather than self-representation. There is no
requirement that a trial court search for an appointed counsel agreeable to the defendant. Solis v.
State, 792 S.W.2d 95, 100 (Tex. Crim. App. 1990); Cain v. State, 976 S.W.2d 228, 235 (Tex.
App.—San Antonio 1998, no pet.). A defendant who is displeased with appointed counsel must
either accept the assigned attorney, effectively waive the right to counsel in order to represent
himself or herself, or show adequate cause for a change of appointed counsel. Thomas v. State, 550
S.W.2d 64, 68 (Tex. Crim. App. 1977); Cain, 976 S.W.2d at 235. A defendant's request to waive
counsel must be "clear and unequivocal." Faretta, 422 U.S. at 835. A request for a new attorney
is not a clear and unequivocal request to represent oneself. These statements indicate Denmark
repeatedly requested counsel, rather than waiving his right to counsel. Therefore, Denmark did not
personally assert his right to self-representation.
            Denmark also argues he asserted the right to self-representation through his attorney. In
Johnson, the Tyler Court of Appeals held that the right to self-representation can be asserted through
an attorney. Johnson v. State, No. 12-02-00165-CR, 2003 Tex. App. LEXIS 4638 (Tex.
App.—Tyler May 30, 2003) (not designated for publication). However, our situation is
distinguishable from Johnson in that Denmark's attorney never made a clear and unequivocal
assertion of the right to self-representation. In Johnson, the defendant's attorney stated "my client
has informed me that he wishes to represent himself and not continue with my representation." Id.
at *6. In a bench conference outside the hearing of the jury during voir dire, Denmark's attorney
stated: 
                        [DEFENSE COUNSEL]: Mr. Denmark wants to address the panel and I told
him the only way he could do that --
 
THE COURT: He cannot.
 
[DEFENSE COUNSEL]: -- would be if he was representing himself.
 
THE COURT: That request is denied.
 
[DEFENSE COUNSEL]: Thank you.
            After consideration of the entire statement, it is clear Denmark's attorney was relaying
Denmark's request to address the jury panel rather than asserting the right to self-representation on
Denmark's behalf. At best, the statement requests hybrid representation. In other words, Denmark
was requesting to represent himself during part of the proceeding, but not the entire proceeding. 
While a trial court may allow hybrid representation at its discretion, a defendant has no constitutional
right to hybrid representation under either the United States Constitution or the Texas Constitution. 
Scarbrough, 777 S.W.2d at 92; see Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977)
(op. on reh'g); see also Reeves v. State, 46 S.W.3d 397, 400 (Tex. App.—Texarkana 2001, pet.
dism'd). It is our conclusion that Denmark's attorney did not make a "clear and unequivocal"
assertion of Denmark's right to self-representation.
            Denmark further contends the trial court's failure to conduct a Faretta hearing resulted in
reversible error. A Faretta hearing is intended to ascertain that the defendant's decision to waive 
counsel was made "knowingly and voluntarily" and that the defendant was "made aware of the
dangers and disadvantages of self-representation, so that the record will establish that 'he knows what
he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835. Since we have no
assertion of the right to self-representation, there was no need for a Faretta hearing. Therefore, the
trial court did not err in failing to hold such a hearing.
            The record indicates Denmark never expressed a desire to exercise his right to self-representation. On the contrary, Denmark repeatedly requested the assistance of counsel by
requesting replacement counsel. At no point did Denmark or his attorney "clearly and
unequivocally" assert Denmark's right to self-representation. We overrule Denmark's first point of
error.
Sufficiency of Evidence
            In his second point of error, Denmark challenges the legal sufficiency of the evidence to
support his conviction for aggravated robbery. Denmark argues that the only direct evidence linking
him to the robbery is the "internally conflicting and uncorroborated testimony of the co-defendant
Sylvester Sanders." We believe that the accomplice witness testimony of Sanders was sufficiently
corroborated and that there is sufficient evidence to support the jury's verdict.
            Denmark argues the accomplice witness testimony is uncorroborated. Article 38.14 provides
that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 1979). "The test for weighing the sufficiency of corroborative evidence is to
eliminate from consideration the testimony of the accomplice witness and then examine the
testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with
the commission of the offense." Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997)
(citing Reed v. State, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988)). 
            The nonaccomplice evidence establishes Denmark's presence at the scene. This evidence
places Denmark in the car before and after the robbery. Jackie Thomas, a security officer with the
Texarkana division of the Texas Housing Authority, testified he had to ask Denmark to leave one
of the Housing Authority properties earlier that day. Thomas testified Denmark left driving a green
Ford Escort. Nonaccomplice testimony also places Denmark in the car after the robbery. While
Officer Matthew Smith of the Texarkana Police Department was interviewing Daniels immediately
after the robbery, he received another dispatch call concerning a green Ford Escort that had run into
a tree six or seven blocks away from the scene of the robbery. Yavonda Moore, who was personally
acquainted with Denmark, testified she observed Denmark walking on the sidewalk from the
accident. The green Ford Escort involved in the accident was shown to be the same car Denmark
had been driving earlier, as well as the same car used in the robbery. Thomas identified the car
involved in the accident as the same car Denmark had been driving earlier that day. Daniels also
recognized the car as the same car involved in the robbery. Officer Smith recovered Daniels' wallet
with her driver's license and identification and belongings from the passenger floorboard of that
vehicle. Further, Denmark's brother stated Denmark kept repeating, "'I didn't do it, I didn't do it, I
didn't hit that old woman" before being located by the police. Denmark's knowledge that an elderly
woman had been robbed indicates he was present at the scene. Thus, the nonaccomplice evidence
indicates Denmark was present at the scene of the crime.
            The mere presence of a defendant at the scene of the crime, though, is insufficient to
corroborate accomplice witness testimony. Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App.
1992); Beathard v. State, 767 S.W.2d 423, 428 (Tex. Crim. App. 1989); Howard v. State, 972
S.W.2d 121, 128 (Tex. App.—Austin 1998, no pet.). However, cumulative circumstantial evidence
of "suspicious circumstances" can be sufficient evidence which "tends to connect" a defendant to the
alleged offense, even if none of the circumstances would be sufficient individually.


 Other
suspicious circumstances when considered with presence at the scene can be sufficient to corroborate
accomplice witness testimony. Lopez v. State, 960 S.W.2d 948, 951–52 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref'd); see Bradley v. State, 48 S.W.3d 437, 440 (Tex. App.—Waco 2001, pet.
ref'd).
            Besides Denmark's presence at the scene, several other "suspicious circumstances" tend to
connect him with the robbery. There is some evidence Denmark fled from the scene of the accident. 
When she observed Denmark walking on the sidewalk away from the wrecked car, Moore testified
Denmark asked her to call an ambulance, but fled when he heard the sirens.


 Flight has long been
held to be a suspicious circumstance. See Cawley v. State, 166 Tex. Crim. 37, 310 S.W.2d 340, 342
(1957); Gonzalez v. State, 115 S.W.3d 278, 283 (Tex. App.—Corpus Christi 2003, no pet. h.). 
Although Daniels could not identify her attacker, Denmark matched the description Daniels had
given to the police. At trial, Daniels' testimony only described the attacker as "[i]t wasn't no girl, it
was a boy." However, Officer Smith testified Daniels told him the attacker was a African-American
male who was wearing "dark pants and shirt, like blue jeans, and not very big." Denmark, who is
five feet two inches tall and weighs approximately 150-160 pounds, was wearing a dark blue multi-colored shirt and blue jeans when arrested approximately an hour and a half after the robbery. 
Further, the owner of the green Ford Escort testified he had loaned his car to Denmark earlier that
evening. Thus, Denmark had the authority to control the use of the car used to transport the parties
involved in the robbery to and from the scene. Last, Robert Earl Singleton, Denmark's stepfather,
testified that, when Denmark stumbled home drunk that evening, he said, "I think I hit a tree." When
considered with Denmark's presence at the scene of the crime, sufficient suspicious circumstances
exist which tend to connect Denmark to the crime.
            Denmark contends the nonaccomplice evidence does not directly link him to the robbery. 
However, the nonaccomplice evidence does not have to directly link the accused to the commission
of the offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); Reed, 744 S.W.2d at
126. Further, the nonaccomplice evidence does not need to prove all the elements of the alleged
offense. Underwood v. State, 967 S.W.2d 925, 928 (Tex. App.—Beaumont 1998, no pet.);
Hernandez, 939 S.W.2d at 176. The accomplice witness rule only requires that there is some
nonaccomplice evidence which "tends to connect" the accused to the commission of the offense
alleged in the indictment. Hernandez, 939 S.W.2d at 176. We believe there are sufficient suspicious
circumstances to corroborate the accomplice witness testimony.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the Court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            Denmark was charged with the offense of aggravated robbery. Section 29.03 of the Texas
Penal Code provides that a person commits aggravated robbery if "he commits robbery as defined
in Section 29.02" and"causes bodily injury to another person or threatens or places another person
in fear of imminent bodily injury or death, if the other person is: (A) 65 years of age or older . . . ." 
Tex. Pen. Code Ann. § 29.03(a) (Vernon 2003). Robbery, under Section 29.02(a) of the Texas
Penal Code, is defined as follows:
A person commits an offense if, in the course of committing theft as defined in
Chapter 31 and with intent to obtain or maintain control of the property, he:
(1) intentionally, knowingly, or recklessly causes bodily injury to another; or
(2) intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.
Tex. Pen. Code Ann. § 29.02 (Vernon 2003). The jury was charged concerning the law of parties. 
Under the law of parties, a person is a party to an offense if "acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense . . . ." Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). Therefore,
the State was required to prove Denmark either intentionally or knowingly caused or intentionally
aided an accomplice who caused bodily injury to Daniels, a person over sixty-five, during the course
of committing theft. 
            Denmark argues there is insufficient evidence because the testimony of Sylvester Sanders,
an accomplice as a matter of law, is inherently inconsistent and no other evidence directly links him
to the robbery. Although Daniels could not identify her attacker beyond the vague description, we
have already held that the accomplice witness testimony was sufficiently corroborated. Because it
turns on an evaluation of credibility and demeanor, the weight of contradictory testimony is within
the sole province of the jury. Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). 
            Based on Sanders' testimony, a rational juror could have concluded beyond a reasonable
doubt that Denmark committed aggravated robbery. Sanders testified he had spent the evening with
Denmark riding around in "some little green car." Sanders confirmed Denmark was asked to leave
the Texas Housing Authority property. Sanders stated that eventually Denmark started talking about
"pulling a lick, you know what I'm saying, robbery, a jack, . . . ." Sanders testified he and Denmark
then went to Oaklawn where the Super Bingo is located. Sanders claims Denmark struck Daniels
and took her purse. Based on this testimony, a rational juror could have concluded Denmark caused
"bodily injury" to Daniels by hitting her. A rational juror could have also found that this injury
occurred in the course of a theft. Sanders testified that Denmark had discussed robbing someone and
that he took Daniels' purse. Based on this evidence, a rational juror could have concluded Denmark
was in the course of committing theft. Last, Daniels testified she was seventy-five years old. Based
on this testimony, a rational juror could have concluded she was over sixty-five at the time of the
robbery. A rational juror could have found all the essential elements of aggravated robbery beyond
a reasonable doubt. In the alternative, we conclude a rational juror could have also found Denmark
was liable based on the law of parties.
            Denmark cites Herndon v. State, 787 S.W.2d 408 (Tex. Crim. App. 1990), for the proposition
that his conviction must be reversed because every other "reasonable hypothesis" has not been
excluded beyond a reasonable doubt. Denmark argues that, although he was linked to the car, he was
not linked to the scene. Further, Denmark contends Morris Mitchell could have been involved as
well. Because there could have been three people in the car, one reasonable hypothesis is that one
of the persons did not rob Daniels or aid by driving the car. The Texas Court of Criminal Appeals
has explicitly held that legally sufficient evidence does not have to exclude every other "reasonable
hypothesis." See Geesa v. State, 820 S.W.2d 154, 156–61 (Tex. Crim. App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000); see Jennings v. State, 107
S.W.3d 85, 89 (Tex. App.—San Antonio 2003, no pet.). Because the every other "reasonable
hypothesis" test no longer applies, this argument is without merit.
            For the reasons stated, we affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          February 18, 2004
Date Decided:             February 20, 2004

Do Not Publish