*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# MEMORANDUM OPINION

No. 04-08-00548-CR

Edward Jamal **PRIESTLY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-0659B
Honorable Sharon MacRae, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:   July 22, 2009

AFFIRMED

Edward Jamal Priestly was convicted by a jury of aggravated robbery with a deadly weapon. The sole issue presented by Priestly on appeal is that the evidence is legally insufficient to support his conviction; therefore, the trial court erred in denying his motion for an instructed verdict at the close of the State's evidence. We overrule Priestly's issue and affirm the trial court's judgment.

A challenge on appeal to the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence presented at trial. *Gallardo v. State*, 281 S.W.3d 462, 472 n.7 (Tex. App.—San Antonio 2007, no pet). In determining the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as the trier of fact, is the sole judge of the credibility of witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Jennings v. State*, 107 S.W.3d 85, 88 (Tex. App.—San Antonio 2003, no pet.). Because it is the province of the jury to determine the facts, any inconsistencies in the testimony should be resolved in favor of the jury's verdict. *Fuentes*, 991 S.W.2d at 271; *Jennings*, 107 S.W.3d at 88.

A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, the person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN. CODE ANN. § 29.02 (Vernon 2003). A person commits the offense of aggravated robbery if the person commits the offense of robbery and causes serious bodily injury to another or uses or exhibits a deadly weapon. TEX. PEN. CODE ANN. § 29.03(a)(2) (Vernon 2003). In this case, the jury was instructed regarding the law of parties and informed that Priestly would be criminally responsible for an offense committed by the conduct of Andre Burke, if acting with intent to promote or assist the commission of the offense, Priestly solicited, encouraged, directed, aided or attempted to aid Burke to commit the offense. *See* TEX. PEN. CODE ANN. § 7.02(a)(2) (Vernon 2003).

On October 25, 2006, Mauricio Avalos was found dead beside a creek. That same afternoon, Priestly, Burke and Phillips were apprehended while driving Avalos's red minivan. Priestly contends the evidence is legally insufficient to show that he, either individually or as a party, committed the offense of aggravated robbery by shooting Avalos and stealing his van. Priestly asserts that the State's evidence established only that he was present when the offense occurred, but mere presence does not make him a party to the offense.

The identity of the perpetrator of an offense can be proven by direct or circumstantial evidence, and juries are permitted to make reasonable inferences from the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 14-15 (Tex. Crim. App. 2007); *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). Although Priestly is correct that mere presence does not make a person a party to an offense, "[p]resence at the scene of the commission of the offense is, however, a circumstance which, when taken with other facts, may be sufficient to show that the accused was a participant." *Suarez v. State*, 31 S.W.3d 323, 327 (Tex. App.—San Antonio 2000, no pet.). In addition, "acts committed before, during, and after the offense may be considered by the [jury] in deciding whether a defendant participated in a common scheme for purposes of party liability." Finally, "flight, though not dispositive, can be considered by the trier of fact as an indication of guilt." *Id*.

Avalos sold all of the electronics in his house two weeks before his death. Avalos told his wife that he had sold the items to pay old drug debts; however, Avalos was not always truthful with his wife about his drug habits. Avalos's mother-in-law testified that he dropped his youngest daughter at her home around 12:45 p.m. on October 25, 2006. Avalos's dead body was found fifteen minutes later around 1:00 p.m.

Before Priestly, Burke, and Phillips were apprehended, Charlotte Smith had been seen driving Avalos's van. Smith testified that Priestly and Burke came to the motel room where she was living on October 25, 2006, between 1:00 p.m. and 2:00 p.m. Smith described Priestly's demeanor as "hyped up . . . like he was happy with what he had done." Priestly told Smith, "My plate is full. I'm hungry but I ate enough." Smith described Burke, on the other hand, as looking pale and shaken. Priestly and Burke told Smith they were in Avalos's van because they intended to sell him "Hoolie Goolie" or fake cocaine. Priestly and Burke told Smith they were with Avalos when he died. Priestly told Smith where Avalos's body would be found. When Smith borrowed the van to go visit her brother, Priestly told her to use a washcloth so she would not leave fingerprints on the steering wheel because the van was stolen.

Priestly and Burke also visited Burke's ex-girlfriend, Tryphosa Baldwin, on the afternoon of October 25, 2006. Baldwin testified that the men were driving a red minivan. Baldwin testified that Priestly used her phone, and Baldwin overheard him laughing and saying, "I popped that nigger."

Phillips testified that Priestly and Burke told him the van was a "rent-a-fee," meaning the van's owner "rented" the van to the men for a few hours in exchange for drugs. When the police pulled the van over for a traffic violation, Priestly tried to flee, but he was apprehended.

Christina Vachon, a forensic scientist, testified that Phillips's hands contained a slight trace of gunshot residue. One micron of gunshot residue was found on Priestly's shirt. Additional microns of gunshot residue were found on Burke's shirt and Phillips's shorts. Vachon testified that a person would have gunshot residue if he fired a weapon, had a weapon that was recently discharged, or was in a location close to where a weapon was discharged.

Having reviewed the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have determined that Priestly was the perpetrator of the offense against Avalos or a party to that offense from his presence at the scene of the offense, his knowledge of the location of Avalos's body, his possession of Avalos's van, Smith's description of his appearance, his warning Smith to use a washcloth in driving the van, his statement that he "popped that nigger," the presence of gunshot residue on his shirt, and his attempt to flee when the van was stopped by police. Because the foregoing evidence is legally sufficient to support Priestly's conviction, the trial court did not err in denying Priestly's motion for instructed verdict, and the trial court's judgment is affirmed.

Phylis J. Speedlin, Justice

DO NOT PUBLISH