

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00473-CR

| | | |
|---|---|---|
| Wilkie Schell Colyer, Jr. | § | From County Criminal Court No. 3 |
| | § | of Tarrant County (1166450) |
| | § | January 17, 2013 |
| v. | § | Opinion by Justice Gabriel |
| | § | Dissent by Justice Walker |
| The State of Texas | § | (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's judgment. It is ordered that the judgment of the trial court is reversed and this case is remanded for a new trial.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Lee Gabriel



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00473-CR

WILKIE SCHELL COLYER, JR.                        APPELLANT

V.

THE STATE OF TEXAS                                 STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

----------

### MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Wilkie Schell Colyer, Jr. appeals his conviction for driving while intoxicated. In a single point, he contends that the trial court erred by denying his motion for new trial alleging juror misconduct. We reverse.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

The State's evidence at trial consisted of the arresting officer's testimony and a videotape showing Appellant's performance on field sobriety tests at the scene of the arrest and at the jail where he was offered, but refused to submit to, a breath test. The evidence was undisputed that the officer found Appellant unconscious in a car at a Fort Worth intersection. The Defense's theory was that Appellant had been overworked and sleep-deprived and that after a night out with friends, he had fallen asleep at the wheel while waiting for the light to change.

After the jury returned its verdict, the judge asked the foreman, Angel Aguilera, whether the verdict was unanimous. Aguilera replied that it was, and Appellant's counsel asked for a poll. The trial court turned to the foreman and asked, "[W]as that your verdict?" Aguilera replied, "It was a majority—It was—Yes, Your Honor." After each of the other jurors individually acknowledged the verdict as their own, the trial court asked the foreman to clarify his earlier response:

> THE COURT: Okay. Mr. Aguilera, you made the statement it was a majority verdict. Was it unanimous or—Would you explain what you meant by that?

> THE FOREMAN: We all took a poll and we voted unanimously, Your Honor.

The trial court discharged the jury and considered each side's recommendations on punishment. Appellant's counsel then stated the following:

3

I approached the Court—I'm not sure if that part was on the record—but when the juror said that it was a majority and then I approached the Court about my concern about that wording and his body language, and I just want to put on the record what I noticed was that he appeared upset. He appeared frustrated. He was—He rolled his eyes. He kind of huffed when he was asked.

You then asked him again, and he rolled his eyes and—and just sort of very abruptly said, ["]hahh.["] I'd also like to point out that—just for the record, we were busy—that we got the note about—dispute about police testimony, then we asked them to clarify exactly what it was.

We got a note about—then the clarification came back that it was actually testimony about the defense witness. In the process of us trying to pull that testimony and get it for them, they came back with the verdict pretty abruptly without the testimony transcript being given—the transcript being given to them.

So just based on his body language, his nonverbal expressions and—and what I watched him say when he—after he said it was a majority, which obviously, legally it has to be unanimous, I would ask the Court to withhold sentencing until a later date.

The trial court later sentenced Appellant to a $550 fine and twenty days in jail and suspended his driver's license for six months. Appellant filed a motion for new trial, alleging among other things that the verdict was decided in a manner other than a fair expression of the jurors' opinions.

Aguilera was the only witness called at the hearing on the motion for new trial. He testified that his verdict was not a fair expression of his opinion:

Q. (BY [Counsel for Appellant]) Was your verdict, specifically your verdict, a fair—a fair expression of your opinion that the State had proven [Appellant] guilty beyond a reasonable doubt?

A. No.

4

Aguilera also testified that he conceded to the other jurors when he received a telephone call from a doctor's office reporting that his daughter had tested positive for a serious illness. He further testified that upon hearing the doctor's news, he felt that he had to be with his daughter immediately and, as a result, he changed his vote in order to leave.

Q. (BY [Counsel for Appellant]) Did you have outside influences that affected your verdict—

A. Yes.

Q. —Mr. Aguilera? And did those outside influences affect you to the extent that you changed your verdict in some fashion?

A. Absolutely.

Q. And how is that?

A. Due to the severity of knowing that my daughter just came down with MRSA and that I had it in the past, I felt I was responsible for her having it and she's innocent. I needed to be home with her immediately. So I had to concede to the other people and get home to my daughter immediately.

Q. Is that what you did, Mr. Aguilera?

A. Yes.

Q. Do you feel that the State proved their case beyond a reasonable doubt?

A. Absolutely not.

The State did not cross-examine the witness or offer any evidence. The trial court denied the motion for new trial.

**Discussion**

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *see Salazar*, 38 S.W.3d at 148. A trial court abuses its discretion by denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *Holden*, 201 S.W.3d at 763.

Appellant argues that the trial court abused its discretion by denying his motion for new trial because there is undisputed evidence that the jury foreman changed his vote from not guilty to guilty due to an outside influence. The State responds that whatever caused the foreman to change his vote was not an "outside influence" as that term has been defined in the context of juror misconduct and that, in any event, his testimony was prohibited by rule of evidence 606(b).

Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any

6

of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex. R. Evid. 606(b). The rules of appellate procedure provide that a defendant must be granted a new trial or a new trial on punishment when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion. Tex. R. App. P. 21.3(c).

Rule 606(b) does not purport to redefine juror misconduct, not does it alter the grounds for obtaining a new trial in criminal cases. *See Sanders v. State*, 1 S.W.3d 885, 887 (Tex. App.—Austin 1999, no pet.). Rules 606(b) and 21.3(c) work together to define jury misconduct and how a defendant may prove the existence of such conduct. *Hines v. State*, 3 S.W.3d 618, 622 (Tex. App.—Texarkana 1999, pet. ref'd). Rule 606(b) defines what evidence is admissible in proving jury misconduct, that is, evidence of outside influences improperly brought to bear on a juror, while rule 21.3(c) limits that permissible evidence to that which is relevant to whether the verdict was a fair expression of the jurors' opinion. Tex. R. Evid. 606(b), Tex. R. App. P. 21.3(c). Thus, if a defendant has evidence that is admissible under rule 606(b), rule 21.3(c) comes into play, and the issue becomes whether the trial court must grant a new trial. *See Hines*, 3 S.W.3d at 622.

In a post-submission letter brief, the State advised us of *McQuarrie v. State*, in which the court of criminal appeals defined "outside influence" as "something originating from a source outside of the jury room and other than from

the jurors themselves." *McQuarrie*, 380 S.W.3d at 154. Applying this definition to the facts in that case, the court held that internet research conducted by a juror at her home during an overnight break from deliberations was an "outside influence" that the trial court could have explored at a hearing on a motion for new trial without delving into deliberations and thereby running afoul of rule 606(b). *Id.*; *see also Ellison v. State*, No. 03-98-00602-CR, 2000 WL 5011, at *4 (Tex. App.—Austin Jan. 6, 2000, pet. ref'd) (not designated for publication) ("Rule 606(b) does not purport to redefine juror misconduct, nor does it alter the grounds for obtaining a new trial in criminal cases.").

In its original brief, the State first argued that Aguilera's testimony did not identify any "outside influences" that affected his verdict. After the court of criminal appeals decided *McQuarrie*, the State adapted its position to argue that the issue is not whether the information Aguilera acquired came from "outside" but whether it amounted to an "influence" at all. In support, the State relies on dicta from a civil case handed down by one of our sister courts more than twenty years before the court of criminal appeals decided *McQuarrie*. *See Kirby Forest Indus., Inc., v. Kirkland*, 772 S.W.2d 226, 234 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (affirming denial of motion for new trial on the basis of juror's contradictory affidavits but observing in dicta that "normal pressures" such as those exerted by employers, family and a juror's own personal preferences would not be considered "outside influences"). Even if this case were more recent,

8

criminal and from this court, dicta has no binding effect. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003).

The State next argued that Aguilera's testimony related to events that were "neutral" and could not have influenced his verdict one way or the other. For this argument, the State relied on another civil case, *Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643 (Tex. App.—Dallas 2002, pet. denied). In that case, three jurors' affidavits reported that the bailiff had informed the jury that even if it considered itself deadlocked, the trial judge would require deliberations to continue for another day. *Id.* at 660. As a result, according to the affidavits, the jurors traded votes on negligence and apportionment issues and thereby reached an agreement on the verdict. *Id.* The court of appeals concluded that the testimony about vote trading was evidence about deliberations and was not evidence of outside influences. *Id.* at 661; *see* Tex. R. Evid. 606(b) ("a juror may not testify as to any matter or statement occurring during the jury's deliberations . . .").

Beyond the court's holding in *Rosell*, however, its discussion of the relevant law actually supports Appellant's position in the case before us today. As the movant for a new trial, Appellant bore the burden of proof. And as the court pointed out in *Rosell*, "[w]hether misconduct occurred is a question of fact for the trial court, and if there is conflicting evidence on this issue the trial court's finding must be upheld on appeal." 89 S.W.3d at 660; *see Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000); *see also Pharo v.*

9

*Chambers Cnty., Tex.*, 922 S.W.2d 945, 948 (Tex. 1996). Juror misconduct warrants a new trial if it reasonably appears from the record that misconduct most likely caused a juror to vote differently than he otherwise would have. *Rosell*, 89 S.W.3d at 661 (citing *Pharo*, 922 S.W.2d at 950). "Determining the existence of probable injury is a question of law." *Id.* Here, the record shows that once Aguilera changed his vote, the verdict was unanimous, which raises a reasonable inference that he was the lone holdout for acquittal. Aguilera testified that an outside influence caused him to change his verdict. Specifically, he testified that while other jurors were talking on their cell phones in the jury room as the court reporter prepared requested testimony, he spoke to his daughter's doctor and learned that his daughter had a serious illness. He further testified that his conversation with the doctor caused him to change his vote before the court reporter provided the requested testimony, that his change of vote to guilty was not a fair expression of his opinion on whether the State had proven the guilt of Appellant, and that he "absolutely" did not believe that the State had proven its case beyond a reasonable doubt. All this testimony went unchallenged by the State, and there was no conflicting evidence for the trial court to resolve against it. Thus, Aguilera's testimony established without dispute that an outside influence caused him to vote differently than he otherwise would have. *See Pharo*, 922 S.W.2d at 950.

The State finally argued that Aguilera's testimony was inadmissible. In almost every instance where the State raised an objection to Aguilera's testimony

at the hearing, the record shows that those objections were sustained. For example, the trial court sustained objections on the grounds of delving into deliberations, exceeding the scope of the hearing, and relevancy. However, Aguilera testified without objection, with no cross-examination, and against no controverting evidence that outside influences caused him to change his verdict to guilty despite his belief that the State had not proven its case beyond a reasonable doubt, in order to allow him to leave the jury room immediately. Contrary to the State's position, we will not hold that rule 606(b) applies to testimony that comes in unopposed by objection.

The rules of appellate procedure list specific grounds for which a trial court *must* grant a new trial. Tex. R. App. P. 21.3(c). These include "when the verdict has been decided by lot or *in any manner other than a fair expression of the jurors' opinion*." *Id.* (emphasis added). When the record unequivocally demonstrates proof of one of the grounds listed in rule 21.3(c), the trial court abuses its discretion by refusing to grant a new trial. *Id.*; *see Salazar*, 38 S.W.3d at 148; *Jennings v. State*, 107 S.W.3d 85, 90 (Tex. App.—San Antonio 2003, no pet.).

Because the uncontroverted evidence in this case established that the foreman in Appellant's trial changed his vote to guilty and that his vote was contrary to a fair expression of his opinion, we hold that the trial court abused its discretion by denying Appellant's motion for new trial. Tex. R. App. 21.3(c); *see Salazar*, 38 S.W.3d at 148; *Jennings*, 107 S.W.3d at 90; *see also Perez v. State*,

11

No. 13-03-00656-CR, 2005 WL 2092907, at *1 (Tex. App.—Corpus Christi Aug. 30, 2005, no pet.) (mem. op., not designated for publication) (reversing a trial court's denial of a motion for new trial when "the uncontroverted evidence establishe[d] juror misconduct.").

## Conclusion

Because the trial court abused its discretion by denying Appellant's motion for new trial, we reverse the trial court's judgment and remand this cause for a new trial.

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

WALKER, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  January 17, 2013

12



WILKIE SCHELL COLYER, JR.                                    APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

----------

## DISSENTING OPINION

----------

I respectfully dissent. I would hold that the telephone call that juror Angel Aguilera received from his doctor's office during the jury's deliberations informing Aguilera that his daughter had MRSA was not an "outside influence" that was improperly brought to bear on Aguilera. *See* Tex. R. Evid. 606(b). Accordingly, Aguilera's testimony concerning the telephone call and its effect on his emotions or its influence on him to assent to the verdict so that he could leave the courthouse and go be with his daughter were not admissible under rule of

evidence 606(b), and the trial court did not abuse its discretion by denying Appellant Wilkie Schell Colyer, Jr.'s motion for new trial based on jury misconduct. *See id.*

Rule 606(b) provides that a juror may not testify about "any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment." *Id.* But the rule provides an exception permitting a juror to testify "whether any outside influence was improperly brought to bear upon any juror." *Id.*

Under Rule 606(b), the telephone call received by juror Aguilera is not, as a matter of law, an outside influence that affected the validity of the verdict; it was a personal pressure on juror Aguilera to end the deliberations so that he could be with his daughter, not information or evidence obtained from outside the jury room or courtroom that influenced juror Aguilera's belief of whether or not Appellant was guilty. *Compare McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012) (holding, in case where defendant allegedly used date rape drugs to effectuate rape of complainant, that juror's at-home internet research on date rape drugs that was relayed to the jury the next morning was outside influence so that jurors' testimony and affidavits were admissible at motion for new trial hearing alleging jury misconduct), *and Jennings v. State*, 107 S.W.3d 85, 90 (Tex. App.—San Antonio 2003, no pet.) (finding juror misconduct when juror changed vote from "not guilty" to "guilty" because of jurors' agreement to be

2

bound to vote in accordance with longer of two lists of facts making defendant guilty and not guilty), *with Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 325 (Tex. App.—Corpus Christi 2012, pet. denied) ("Personal pressures felt by jurors to wrap up the deliberations do not constitute outside influences."), *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 660–61 (Tex. App.—Dallas 2002, pet. denied) (reasoning that bailiff informing jury that it would have to deliberate another day unless a decision was reached was neutral information that would not persuade a juror to decide the case in any particular manner), *and Kirby Forest Indus., Inc. v. Kirkland*, 772 S.W.2d 226, 234 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (holding testimony of two jurors that they changed their votes because of pressures to return to work was inadmissible because such pressures were not outside influences within the meaning of rule 606(b) and rule of civil procedure 327).[1]

Although juror Aguilera changed his vote to "guilty" in order to end the deliberations after he received the call from his doctor's office, he merely

---

[1]Although civil in nature, these cases interpret and apply in rule 606(b), which is applicable in both criminal and civil cases. The Texas Court of Criminal Appeals has relied upon the Texas Supreme Court's interpretation of rule 606(b), and likewise, we will rely on our sister courts' interpretations as persuasive authority here. *See, e.g.*, *McQuarrie*, 380 S.W.3d at 164 ("In 1998, when the civil and criminal evidentiary rules were merged, Rule 606(b), as promulgated by the Texas Supreme Court, became applicable to criminal cases as well as civil cases. Our interpretation and application of [rule 606(b)] should follow that of our state supreme court.") (Cochran, J., dissenting); *Jeffery v. State*, 169 S.W.3d 439, 443 (Tex. App.—Texarkana 2005, pet. ref'd) (noting that decisions of other appellate courts may be relied upon as persuasive, but not binding, authority).

succumbed to personal pressures on his mind and emotions—he was not persuaded concerning the guilt or innocence of Appellant by information he received from outside the jury room and the courtroom. Consequently, because juror Aguilera's testimony did not fall within the "outside influence" exception to rule 606(b), it was inadmissible and could not have been proof of juror misconduct.[2] To hold otherwise, as the Majority Opinion does, is to transform the normal pressures of jury service experienced to some degree by all jurors into outside influences constituting jury misconduct. *See Kirby Forest Indus., Inc.*, 772 S.W.2d at 234. As the Houston Fourteenth court explained in *Kirby Forest Industries*, regarding pressures on jurors to return to work,

> [T]his seems to be an unfortunate aspect of the jury system about which little can be done. There are always pressures not only from employers but also family, recreation and personal preferences of jurors. We do not consider these normal pressures to be an outside influence within the meaning of the rules. Were they to be considered an outside influence, few verdicts would stand.

*Id.*

---

[2]The majority holds that rule 606(b) does not apply to the juror's testimony at the hearing on the motion for new trial because the State did not object to it; but the State did assert rule 606(b) objections several times throughout the hearing and even began the hearing by voicing its opposition to having any hearing at all because rule 606(b) prohibited the evidence that defense counsel sought to introduce. [rr4:5-6] Thus, the applicability of rule 606(b) to juror Aguilera's testimony was before the trial court and is before us. *Cf. Brantley v. State*, 48 S.W.3d 318, 329 (Tex. App.—Waco 2001, pet. ref'd) (refusing to apply rule 606(b), although noting that testimony would have been inadmissible under that rule, when the State—unlike the State here—failed to raise *any objection* on that basis at the trial level).

4

I would hold that the trial court did not abuse its discretion by denying Appellant's motion for new trial. Because the majority does not, I respectfully dissent.

SUE WALKER<br>JUSTICE

PUBLISH

DELIVERED: January 17, 2013