# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-23-00560-CR
NO. 03-23-00561-CR
NO. 03-23-00562-CR
NO. 03-23-00563-CR
NO. 03-23-00564-CR

**William Harold Masterson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
NOS. 23-0109-K26, 23-0110-K26, 23-0111-K26, 23-0112-K26, & 23-0113-K26
THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING**

## O P I N I O N

William Harold Masterson pleaded guilty open to the court to five counts of possession of child pornography. *See* Tex. Penal Code § 43.26(a). He had rejected a plea-bargain offer of seven-year sentences on each count with all sentences to run concurrently. The trial court accepted his open plea and assessed punishment at the maximum of 10 years in prison for each count with the sentences to run consecutively.[1]

---

[1] *See* Act of Apr. 25, 1995, 74th Leg., R.S., ch. 76, § 14.51, 1995 Tex. Gen. Laws 458, 840 (amended 2015, 2023) (current version at Tex. Penal Code § 43.26(d)) (Masterson's offenses were third-degree felonies); Tex. Penal Code §§ 3.03(b)(3) (sentences for multiple counts of possession of child pornography may run consecutively even if the offenses arise out of same criminal episode), 12.34(a) (punishment range for third-degree felonies).

Masterson's appellate issues are three complaints that ineffective assistance of counsel led him to reject the plea-bargain offer in that trial counsel (1) failed to investigate the trial court's sentencing practices, (2) provided an uninformed opinion that grossly mischaracterized the likely sentencing outcome of Masterson's cases, or (3) failed to give any advice about the desirability of taking the seven-year plea-bargain offer. The first two complaints were resolved against him on his motion for new trial, and the third is raised for the first time on appeal. Because under each of Masterson's first two complaints the record would have allowed the trial court to reasonably rule that trial counsel had not performed deficiently, the trial court did not abuse its discretion by denying the motion for new trial. And because under the third complaint Masterson has not proven deficient performance by a preponderance of the evidence, the third complaint does not require reversal. We thus affirm the trial court's judgments of conviction.

**BACKGROUND**

Soon after his arrest for possession of child pornography, Masterson retained trial counsel. Trial counsel testified at the later hearing on the motion for new trial that Masterson and trial counsel during their first conversations discussed potential punishment for the offenses for which charges were soon to be filed. Trial counsel testified that he explained to Masterson the range of punishment for the offense of possession of child pornography and that any sentences for multiple charges of the offense could run consecutively. Masterson, trial counsel recalled, said that he wanted to avoid prison. Trial counsel thus developed a strategy that Masterson would plead guilty open to the court on punishment and counsel would present mitigating sentencing evidence to try to get probation.

The State then charged Masterson with the five counts here and made a plea-bargain offer. The offer was seven years in prison on each of the five counts but with all sentences running concurrently. Masterson ultimately rejected the offer.

At the sentencing hearing, trial counsel elicited testimony in line with his strategy of trying to get probation. For example, he elicited from experts how low the likelihood was that Masterson would reoffend and put forward evidence of Masterson's lack of criminal history and lack of inappropriate in-person contact with children. Still, the court sentenced him to the maximum—10 years in prison for each count with the sentences running consecutively.

About three weeks after the sentencing hearing, the court allowed trial counsel to withdraw and appointed another attorney to represent Masterson. The appointed attorney filed the motion for new trial and at the evidentiary hearing on the motion developed a record, via testimony and exhibits, in support of the two ineffective-assistance complaints that the motion raised. The State put on competing evidence, including both affidavit and live testimony by trial counsel.

After the evidentiary hearing, the trial court denied the motion for new trial and issued findings of fact and conclusions of law. The findings concern the two complaints raised in the motion. Masterson now appeals, raising all three ineffective-assistance complaints.

**APPLICABLE LAW OF INEFFECTIVE-ASSISTANCE DEFICIENT PERFORMANCE**

The constitutional right to effective assistance of counsel extends to the plea-bargaining context, where it is subject to the two-part test of *Strickland v. Washington*. *Missouri v. Frye*, 566 U.S. 134, 138, 140, 144 (2012). Under that test, for a complaint of ineffective assistance of counsel to succeed, a defendant must show both (1) deficient performance and (2) prejudice. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). Failing to make

3

either showing defeats the complaint. *Strickland v. Washington*, 466 U.S. 668, 670 (1984). Both showings must be made by a preponderance of the evidence. *Chuong Duong Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Whether each respective showing has been made is a mixed question of law and fact. *Strickland*, 466 U.S. at 698.

To show deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and when considering all the circumstances.[2] *See id.* at 687–88. This requires showing "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "There is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 689). "Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight." *Id.*

## MASTERSON'S FIRST TWO INEFFECTIVE-ASSISTANCE COMPLAINTS— MOTION FOR NEW TRIAL

### I.      Standard of review

We review a denial of a motion for new trial for an abuse of discretion. *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021). The trial court abuses its discretion only if its decision is arbitrary or unsupported by any reasonable view of the evidence. *See id.* at 372.

---

[2] Masterson adds among his arguments the assertion that trial counsel's purported ineffective assistance caused the guilty plea to be involuntary. An involuntariness complaint like this is also evaluated under the *Strickland* two-part test for ineffective assistance. *See Ex parte Ali*, 368 S.W.3d 827, 833 (Tex. App.—Austin 2012, pet. ref'd).

This standard is deferential to the trial court, requiring us to view the evidence in the light most favorable to its ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). When deciding whether a trial court abused its discretion, we must not substitute our judgment for the trial court's but must uphold its ruling if it is within the "zone of reasonable disagreement." *Id.* The trial court abuses its discretion only when no reasonable view of the record could support the court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

A trial court may take evidence supporting or opposing a motion for new trial, including by affidavit or live testimony. *See* Tex. R. App. P. 21.7; *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). When it is evaluating evidence to decide whether to grant a motion for new trial, the trial court is the exclusive judge of the credibility of the evidence. *Najar*, 618 S.W.3d at 372. It has the right to accept or reject any part of any witness's testimony, whether live or by affidavit. *Id.* at 371. The court may even disbelieve testimony that is uncontroverted. *Id.* at 372–73; *see also Okonkwo*, 398 S.W.3d at 694 (when trial court denied motion for new trial but made no fact findings, its denial was supported by all implied findings favoring prevailing party, including implied finding that affidavit testimony supporting motion for new trial was not credible). The trial court need not believe any particular fact unless the fact is conclusively established. *Najar*, 618 S.W.3d at 372. Thus, "if there are 'at least two' plausible interpretations of the evidence, it is within the trial court's exclusive purview to decide which interpretation to believe." *Id.* (quoting *Evans v. State*, 202 S.W.3d 158, 165 (Tex. Crim. App. 2006)); *see also Burch*, 541 S.W.3d at 820 ("The trial court's ruling is within the 'zone of reasonable disagreement' when there are two reasonable views of the evidence.").

A trial court may make written findings of fact in ruling on a motion for new trial. Tex. R. App. P. 21.8(b). When the trial court makes no findings, we must presume all implied

findings in favor of the prevailing party. *Najar*, 618 S.W.3d at 371; *see Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) (noting appellate presumption in absence of express findings "that all reasonable factual findings that could have been made against the losing party were made against that losing party"). If the trial court does make findings, then we afford almost total deference to its findings of historical facts and to its findings on mixed questions of law and fact when those latter findings turn on evaluating witness credibility and demeanor. *See Najar*, 618 S.W.3d at 371; *Alford v. State*, 400 S.W.3d 924, 929 n.3 (Tex. Crim. App. 2013); *Okonkwo*, 398 S.W.3d at 694. However, for mixed questions of law and fact that do not turn on credibility and demeanor, we review *de novo*. *Jennings v. State*, 107 S.W.3d 85, 90 (Tex. App.—San Antonio 2003, no pet.) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Overall when it comes to the trial court's findings, we decide whether the evidence, viewed in the light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *see Johnson v. State*, 524 S.W.3d 338, 340–41, 343 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (applying *Kelly* in review of ruling on motion for new trial).

As for questions of law raised in connection with a motion for new trial, we review a trial court's decisions on such questions *de novo* but uphold its ultimate ruling under any applicable theory of law supported by the facts of the case. *See Briggs v. State*, 560 S.W.3d 176, 184 (Tex. Crim. App. 2018); *Alford*, 400 S.W.3d at 929. This is so even if the trial court articulated an invalid basis for its ruling. *Briggs*, 560 S.W.3d at 184. "Even if the trial court had limited its conclusion of law to a particular legal theory, an appellate court would not be required to defer to that theory under its de novo review." *Alford*, 400 S.W.3d at 929.

**II.    Masterson's first complaint fails because it depends on a factual premise that the record allowed the trial court to reasonably reject.**

In his first complaint of ineffective assistance, Masterson argues that trial counsel performed deficiently because he failed to investigate the trial court's sentencing practices.[3] Exactly what Masterson faults trial counsel for not knowing is elusive—the argument seems to be that (i) trial counsel admitted to doing nothing to investigate the particular trial judge's sentencing practices, (ii) trial counsel thus was unaware of what those sentencing practices are,[4] and (iii) had he investigated them he would have discovered that the particular trial judge was likely to impose as Masterson's punishment consecutive sentences of total duration longer than the seven years

---

[3] Both Masterson and the State treat this complaint of failure to investigate a judge's sentencing practices as if it should be analyzed like courts analyze complaints of failure to investigate the facts or law relevant to the merits of a defendant's case. *See, e.g.*, *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023) ("It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel." (quoting *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983))). We do not decide here whether complaints like Masterson's should be analyzed like those other types of complaints are analyzed.

[4] This second step is crucial to the complaint because if counsel was still aware of the trial court's sentencing practices despite not investigating them further during this particular case, then the alleged failure to investigate here would not fall below reasonably professional assistance. *See Strickland v. Washington*, 466 U.S. 668, 690–91 (1984) ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); *Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013) ("When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." (quoting *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006))).

that the State had offered.[5]   *Cf. Strickland*, 466 U.S. at 687–88, 695 (deficient-performance inquiry takes into account all surrounding circumstances and may involve extent to which "the idiosyncrasies of the particular decisionmaker, such as propensities toward harshness or leniency[,] . . . may actually have entered into counsel's selection of strategies").

But under that third step of the argument, the record reasonably supports the trial court's rejection of this ineffective-assistance complaint.[6]   *See Briggs*, 560 S.W.3d at 184 (trial court's ultimate ruling should be upheld under any applicable theory of law supported by facts of case); *Alford*, 400 S.W.3d at 929 (same); *Webb*, 232 S.W.3d at 112 (trial court abuses its discretion only when no reasonable view of record could support court's ruling).  Masterson's motion for new trial, which was supported by his appointed attorney's verification, points out that publicly available records show that the trial judge here has approved plea bargains in cases involving possession of child pornography and that at least some of those approved plea bargains did not involve consecutive sentences.  Thus, because there is a reasonable view of the record to support rejecting one of the factual premises essential to this ineffective-assistance complaint, we conclude that the trial court did not abuse its discretion when overruling the portion of the motion for new

---

[5] Although Masterson draws support for his arguments from *Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980) (plurality op.), that case does not bind us because it has "no precedential value." *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (discussing *Ex parte Duffy*).

[6] If instead Masterson's argument is that trial counsel was unaware of the sentencing practices of Williamson County judges more generally because he did nothing to investigate them, that argument is foreclosed by the trial court's relevant findings, which are themselves supported by the evidence.  *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006) (trial-court findings should be upheld when the evidence, viewed in light most favorable to trial court's ruling, supports the findings).  The court found that trial counsel is experienced, sometimes practices in Williamson County, and is familiar with Williamson County's judges' reputation for being tough.  Evidence supporting these findings comes from trial counsel's affidavit testimony.

trial that advanced this complaint. *See Webb*, 232 S.W.3d at 112; *see also Ex parte Bowman*, 533 S.W.3d 337, 350–51 (Tex. Crim. App. 2017) (failure-to-investigate complaint failed when record did not support factual premise on which complaint relied).

**II. Masterson's second complaint fails because the record would have allowed the trial court to reasonably conclude that trial counsel's advice was not incorrect about the possible sentencing exposure and was not a gross mischaracterization of the likely sentence.**

In his second complaint of ineffective assistance, Masterson contends that trial counsel performed deficiently because he provided an uninformed opinion that grossly mischaracterized the likely sentencing outcome of Masterson's cases. He adds that "trial counsel misadvised [him] by stating it was highly unlikely the trial court would order consecutive sentences in these cases." He calls trial counsel's "highly unlikely" advice "incorrect advice" and draws on erroneous-advice cases from the federal circuit courts.

Masterson in drawing on those cases identifies two purported types of deficient plea-bargain advice—(1) incorrect statements about *possible* sentencing exposure and (2) statements that grossly mischaracterize the defendant's *likely* sentence. Applying either standard that Masterson puts forward leads us to conclude that the trial court did not abuse its discretion when rejecting this ineffective-assistance complaint.

**A. *Purported incorrect advice about possible sentencing exposure***

The first standard, concerning advice about a defendant's possible sentencing exposure, is exemplified by Masterson's reliance on *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998). There, the court applied circuit precedent requiring defense counsel to "give the client the benefit of counsel's professional advice on th[e] crucial decision" of "whether to plead guilty or contest a criminal charge." *Gordon*, 156 F.3d at 380 (quoting *Boria v. Keane*, 99 F.3d 492,

9

496–97 (2d Cir. 1996)); *accord Walker v. State*, 651 S.W.3d 7, 13 (Tex. App.—Houston [14th Dist.] 2020, order) (per curiam). Inherent to that obligation, the court said, is that the defendant should know "the comparative sentencing exposure between standing trial and accepting a plea offer." *Gordon*, 156 F.3d at 380 (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). Applying this law, the court held that the district court's finding that the defense lawyer had performed deficiently because he told his client the incorrect range of punishment, i.e., less than half of the possible sentencing range, was not clearly erroneous. *See id.* at 377–78, 380.

But here, the record would have allowed the trial court to reasonably rule that trial counsel's conduct did not fall below the standard applied in *Gordon*, that is, that trial counsel's advice about the possible sentence exposure was not wrong. The trial court found that Masterson "acknowledged that [trial counsel] advised him of the possibility of stacked sentences," and this finding is supported by trial counsel's testimony from the hearing on the motion for new trial. Also, the trial court could reasonably have found that trial counsel told Masterson that each of his charges could be punished by 10 years in prison because testimony by Masterson at the hearing supports such a finding. Therefore, there is a reasonable view of the record that would have supported the trial court's ruling against Masterson on this ineffective-assistance complaint to the extent the complaint depends on purported incorrect advice about possible sentencing exposure. *See Webb*, 232 S.W.3d at 112.

### B. *Purported gross mischaracterization of likely sentence*

The second standard that Masterson puts forward for this complaint involves purported gross mischaracterization of the likely sentencing outcome for the defendant and is exemplified by Masterson's reliance on *Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986). The court in

10

*Iaea* concluded: "Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." *Iaea*, 800 F.2d at 865 (internal citations omitted). The defense lawyer there, in getting Iaea to plead guilty, had "made a serious error in informing Iaea that he was subject to" a statute providing for certain mandatory minimum sentences and had given the "faulty" advice that the likelihood of an extended sentence "was practically non-existent and that [Iaea] might receive probation." *See id.* at 864–65. This latter advice was faulty because the "prosecutor was part of a special team constituted to deal with repeat offenders, and indicated that he would press for extended sentencing." *Id.* at 865.

These latter facts distinguish *Iaea* from Masterson's case. The record here does not show a similar press for extended sentencing before Masterson decided to reject the seven-year plea bargain. Trial counsel's testimony from the hearing on the motion for new trial shows that the prosecutor first raised the possibility of consecutive sentences during closing argument during the sentencing hearing, well after Masterson had rejected the plea bargain. *See Hart*, 667 S.W.3d at 781 ("Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight.").

In addition, for trial counsel's "highly unlikely" advice on consecutive sentences to be shown to be a gross mischaracterization, Masterson needed at least to put on evidence of how the trial court had sentenced defendants presenting circumstances similar to Masterson's. *See Chuong Duong Tong*, 25 S.W.3d at 712 (deficient-performance showing must be made by preponderance of the evidence); *Ex parte Bowman*, 533 S.W.3d at 350–51 (failure of necessary factual premise defeats deficient-performance showing); *Munoz v. State*, 24 S.W.3d 427, 434 (Tex.

11

App.—Corpus Christi–Edinburg 2000, no pet.) (deficient-performance showing was not made when no evidence was put forward on elements of particular deficient-performance complaint). For if other defendants whose cases presented a mix of aggravating and mitigating facts like Masterson's were given concurrent sentences not infrequently, then trial counsel's "highly unlikely" advice was not a gross mischaracterization. The most the record shows in Masterson's favor on this topic is that the particular trial judge had ordered consecutive sentences in some other cases of possession of child pornography. This was not evidence of a gross mischaracterization by trial counsel because the record does not show how, if at all, those other defendants' circumstances matched Masterson's. For example, the sentencing evidence here showed that Masterson had no criminal history, was cooperative with investigators, admitted his guilt to them, accepted responsibility, had not had any inappropriate in-person contact with children, and had good prospects for successful employment. Only if there was evidence showing that the trial court had commonly sentenced other such defendants to consecutive sentences would there be evidence that trial counsel's "highly unlikely" advice was a gross mischaracterization. There was no such evidence.[7]

In all then, the record presented to the trial court would have allowed it to reasonably find that trial counsel's advice was not a gross mischaracterization of Masterson's likely sentencing outcome. We thus overrule Masterson's issue challenging the denial of his motion for new trial.

---

[7] The analysis is much the same for the list of cases that Masterson provides—for the first time on appeal—of other cases in which charges for possession of child pornography resulted in consecutive sentences from the same trial court or from elsewhere in Texas. Those cases do not show that defendants with mitigating circumstances like Masterson's are nevertheless commonly sentenced to consecutive sentences.

## MASTERSON'S THIRD INEFFECTIVE-ASSISTANCE COMPLAINT—
## RAISED FIRST ON APPEAL

Masterson's third and final complaint of ineffective assistance is that trial counsel performed deficiently by failing to give any advice at all about the desirability of taking the seven-year plea-bargain offer.[8] *See, e.g.*, *Walker*, 651 S.W.3d at 13 ("Counsel has a duty to advise the defendant fully on whether a particular plea to a charge appears to be desirable. This does not mean that counsel must, under all circumstances, give an explicit opinion as to whether a defendant should take a plea offer. . . . But, in advising a defendant about the desirability of a plea, counsel 'should usually inform the defendant of the strengths and weaknesses of the case against him.'" (internal citations omitted) (quoting *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000))). He raises this complaint for the first time on appeal—it was not submitted to the trial court for decision. We thus apply the standards applicable to ineffective-assistance complaints first raised on direct appeal from the conviction. *See Straight v. State*, 515 S.W.3d 553, 564, 572–76 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

Complaints of ineffective assistance must be firmly rooted in the record. *Hart*, 667 S.W.3d at 782. Even when reviewed for the first time on direct appeal from the conviction, complaints of ineffective-assistance still must be shown by a preponderance of the evidence in the record. *See id.* at 781; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

---

[8] This complaint is in some tension factually with the second complaint, under which Masterson faulted trial counsel for advice given during plea-bargaining that consecutive sentences were highly unlikely. Nothing before us prevents Masterson from raising ineffective-assistance complaints in the alternative. For example, perhaps because the trial court found trial counsel's testimony credible when denying the motion for new trial, Masterson bases this third ineffective-assistance complaint largely on trial counsel's testimony.

Masterson relies on the following testimony by trial counsel as support for finding that trial counsel gave him no advice at all about the desirability of the seven-year offer:

Q. Okay. Did you advise Mr. Masterson to accept or reject the offer?

A. I didn't advise him either way to accept or reject the offer. I presented the offer to him, and he told me he would like to reject it.

. . . .

Q. All right. [Trial counsel], I have on the overhead here Defendant's Exhibit E.[9] Could you please read the highlighted portion of this document?

A. We haven't talked about their seven-year offer, but I assume your plan is to reject that and go for the probation like we have talked about from the beginning.

Q. Do you think that a reasonable person would interpret that as advice to reject the State's plea bargain offer?

A. No, I don't think that.

Q. You're certainly not recommending in this email that Mr. Masterson accept the State's plea bargain offer?

A. No, but that email simply reflects conversations that him and I had prior to that email being sent.

Q. So you have a duty to provide advice as to the plea bargain offer, correct?

A. Absolutely.

Q. And this email doesn't really provide any advice. It just says, I assume you're going to reject, correct?

A. Right, based on our prior conversations.

. . . .

Q. Okay. That you—that—so he knew that—he was aware there was a possibility—

_____

9 The exhibit contains an email from trial counsel to Masterson.

14

A. Yes.

Q. —that sentences could be stacked?

A. Yes.

Q. Okay.

A. And as you can see from the one exhibit that he—that the defense showed, the email, where I say—where we're talking—where I'm emailing Mr. Masterson about the offer—

Q. Uh-huh.

A. —I think it's clear to show, I mean, that's sort of my style. My style has grown over the years to—I don't like to have that—the guilty feeling where I'm strong-arming a defendant to take a plea deal. I've been accused of that before by—to reference a prior question that you had. I want the defendants to understand what they're facing, and I want them to make their decisions. I try to avoid—you know, on the other hand, with the benefit of hindsight, obviously I would throw myself in front of the bus now with Mr. Masterson and beg him to take the deal that they had offered. But that's with the benefit of hindsight.

Q. Okay. And so I put up on the screen the email that I believe you're making reference to, and the highlighted portion that [appointed attorney] highlighted said, We haven't talked about their seven-year offer, but I assume your plan is to reject that and go for probation like we have talked about from the beginning.

A. Yes.

Q. Okay. Was—this was—was this a recommendation on your part to reject the offer?

A. No. It was really an acknowledgement of what he had told me before in our conversations.

Q. Okay. So you had had conversations with him prior to this email being sent where he made it clear to you that he desired probation?

A. Right. And we had discussed that a plea offer would be made. And, you know, I don't remember specifically, but we weren't surprised that it was this.

Q. Okay.

A. It was anticipated. So this was an acknowledgement of, Hey, we got an offer that was in the ballpark we probably anticipated based on our prior conversations; I assume you still want to move forward with the sentencing for probation.

Masterson also relies on the following testimony by trial counsel. Masterson says that the testimony supports a finding that trial counsel did not consider the likelihood of consecutive sentences until at the sentencing hearing the prosecutor first mentioned consecutive sentences in closing argument. And he argues that this set of circumstances undermines the effectiveness of trial counsel's advice to Masterson about the plea-bargain offer. Trial counsel testified:

Q. Okay. So, I guess, going back to the email that's on the screen, it was the stacking of the sentences that was totally unexpected to you, correct?

A. Yes.

Q. Okay. But you knew that it was a possibility. Is that correct?

A. Yes. I will say I had never had a case that I was involved in where that was the outcome. . . . I've had cases where that was eligible to happen, and it had never happened. I had dealt with prosecutors who had threatened it and obviously took it serious when it was threatened in that way . . . and that was the reference I made to Ms.—to the prosecutor in this case. Not that I thought she had some kind of duty to tell me that, but that—just one more thing to add to why it was unexpected. It was never brought up. The first time I heard those words were when she asked for it in closing.

. . . .

Q. So when you were [testifying under examination by the State], you indicated that you had never heard before from [the prosecutor] that she would ask the Court to impose consecutive sentences, correct?

A. Yes. I don't ever recall that, no.

Q. Okay. And one reason that you never heard that before is because you never asked [the prosecutor] what she would ask the Court for if you pleaded open?

A. I don't want to say anything that I don't know for sure. My recollection is that there were discussions, and so I think some of my comments are based on the

16

impressions I got from that—those discussions. I don't remember specific words, so I don't know.

Q. If [the prosecutor] had volunteered that information, Hey, if you go open to the judge, I'm going to ask her to stack all the sentences, how would that have affected the advice you proved to Mr. Masterson?

A. I would have went back and told him, This prosecutor is threatening to stack sentences, and we would have discussed that and took further steps to evaluate that threat.

Q. Would you agree that if there's a discussion about stacked sentences that the seven-year offer looks a bit more favorable?

A. Yes.

This is not no advice as Masterson claims. They discussed his lack of criminal history, desire not to go to prison, and the potential range of punishment. As we noted above, attorneys are not required to give an explicit opinion as to whether a defendant should take a plea offer. *See Purdy*, 208 F.3d at 45.

Additionally, in contrast with trial counsel's testimony, Masterson's own testimony from the hearing on the motion for new trial tends to show that trial counsel had in fact given his professional opinion on the seven-year offer, instead of simply relying on Masterson's desire to avoid prison:

Q. What was [trial counsel]'s opinion of the State's plea bargain offer?

A. He said that seven was, you know, near the maximum of ten and that we had a good possibility of getting probation or lower if we stuck with our original plan of an open plea.

In addition, an exhibit admitted into evidence at the hearing on the motion for new trial shows trial counsel discussing with Masterson over email the experts that trial counsel was going to put

17

forward at the sentencing hearing. Those experts would go on to give opinions tending to support that Masterson should not be sentenced to the maximum and was a good candidate for probation.

After weighing all the testimony and evidence, we conclude that Masterson has not shown by a preponderance of the evidence that trial counsel did not give him any advice at all about the desirability of the seven-year offer. Because Masterson has not shown deficient performance by a preponderance of the evidence for this third complaint of ineffective assistance, this complaint fails. And we overrule Masterson's remaining issue.

## CONCLUSION

We affirm the trial court's judgments of conviction.

_____

Chari L. Kelly, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: October 31, 2024

Publish